United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY NAROG, | No. C-13-03237 DMR |
| Plaintiff(s), | **ORDER RE: JOINT DISCOVERY LETTERS [21] and [27]** |
| v. | |
| CITY OF REDWOOD CITY, | |
| Defendant(s). | |

Before the court are a joint discovery letter filed by Plaintiff Cory Narog and a third party, the law firm of Hayes, Scott, Bonino, Ellingson & McLay, LLP ("Hayes Scott") ["Hayes Scott Letter," Docket No. 21] and a joint discovery letter filed by Plaintiff and another third party, the law firm of Hartnett, Smith & Paetkau ("HSP") ["HSP Letter," Docket No. 27]. In each letter, Plaintiff seeks to compel the non-party to produce documents in response to Plaintiff's subpoena. The court held a hearing on the letters on March 13, 2014. For the reasons stated below and at the hearing, Plaintiff's motions to compel are **denied.**

## I. BACKGROUND

**A. Factual Allegations in First Amended Complaint**

On August 23, 2013, Plaintiff filed this lawsuit against the City of Redwood City ("Redwood City"), three of Redwood City's police officers (Officers Figueroa, Faljean, and Gary), and unnamed Doe defendants. *See* First Am. Compl. ("FAC") [Docket No. 7]. Plaintiff alleges that he called the

Redwood City Police Department ("RCPD") on September 5, 2010, to report an incident of suspected vandalism at his home in Redwood Shores, California. Plaintiff had ongoing problems with his neighbors, and suspected that one of them may have vandalized his property. Officer Figueroa met with Plaintiff, visited Plaintiff's property, reviewed his statement, and left. FAC ¶¶ 14-17.

Plaintiff alleges that on next day, September 6, 2010, Officer Faljean attended a neighborhood watch meeting at which Plaintiff was not present and advised the meeting attendees to monitor and document Plaintiff's activities. Plaintiff believes that Officer Faljean's conduct caused Plaintiff's neighbors to conduct surveillance on Plaintiff's property and to harass and annoy Plaintiff. FAC ¶¶ 18-19.

Between September 2010 and August 2011, Plaintiff's relations with his neighbors worsened and resulted in litigation between Plaintiff and several of his neighbors, including Allen Claybaugh. Plaintiff alleges that Claybaugh's attorney, Dara Tang of Hayes Scott, met several times with officers of the RCPD to discuss future action to be taken against Plaintiff. FAC ¶ 20.

On August 18, 2011, Officer Gary contacted Plaintiff to discuss Plaintiff's September 5, 2010 report of suspected vandalism. On February 9, 2012, the San Mateo County District Attorney filed a criminal complaint against Plaintiff alleging a misdemeanor violation of California Penal Code § 148.5(a) for making false reports to police. On May 8, 2012, Plaintiff went to the RCPD to pick up police reports he had requested and was arrested by several police officers in connection with the criminal complaint. FAC ¶ 30. Plaintiff was held for two days and released on bail.

Plaintiff made six court appearances in connection with his criminal case from June 2012 until December 2012. FAC ¶ 34. On December 17, 2012, the criminal complaint against Plaintiff was dismissed. *Id.*

Plaintiff now brings six causes of action against Defendants: (1) malicious prosecution in violation of the Fourth Amendment and 42 U.S.C. § 1983; (2) retaliation in violation of the First Amendment and Section 1983; (3) infringement on Plaintiff's due process rights in violation of the Fourteenth Amendment and Section 1983; (4) violation of California Civil Code § 52.1; (5) intentional infliction of emotional distress; and (6) abuse of process. FAC ¶¶ 43-83.

**B. Hayes Scott's Description of Events[1]**

Hayes Scott paints quite a different picture of the events surrounding this litigation. According to Hayes Scott, one of Plaintiff's neighbors obtained a restraining order against Plaintiff in 2004 for, among other things, driving his truck noisily up and down the street and "mooning" his neighbors. Plaintiff violated the restraining order, which resulted in a criminal charge. Several of Plaintiff's neighbors testified against Plaintiff at the criminal trial. A jury determined that Plaintiff had violated the restraining order and in 2006 Plaintiff was sentenced to six months in custody. The judge also entered a restraining order prohibiting Plaintiff from entering the Redwood Shores community for three years.

In June 2009, upon expiration of the restraining order, Plaintiff returned to the community and began targeting those neighbors who had testified against him by filing petitions for restraining orders against them. Hayes Scott represented three people against whom Plaintiff had filed petitions (Raymond Fung, Allen Claybaugh, and Elayne Pace); an attorney named Michael Allen represented another (Gary Krippendorf); and Jim Hartnett, an attorney from HSP, represented Scott Armstrong, another neighbor against whom Plaintiff had made allegations but has not filed a petition for restraining order.

Plaintiff's petition against Fung was filed in March 2010. A court denied the petition in April 2010. Plaintiff then filed a series of petitions against Claybaugh, Pace, and Krippendorf between September and November 2010. All three were scheduled to be heard before the same judge (Judge Freeman of the San Mateo County Superior Court) on the same day in December 2010.[2] Thus, the Hayes Scott firm, Michael Allen, and HSP allege that they agreed to share information subject to a joint defense privilege in light of their common interest of defending

---

[1] HSP incorporated Hayes Scott's description of events into its discovery letter, noting that it "concisely and accurately detail[s] the immediate factual background leading to this litigation." HSP Letter at 6.

[2] The three petitions stem from different events. Plaintiff's September 2010 petition against Claybaugh alleged that Claybaugh was deliberately harassing Plaintiff by playing basketball at 6 a.m.; his October 2010 petition against Krippendorf alleged that Krippendorf was taking pictures of Plaintiff; and his November 2010 petition against Pace alleged that Pace was trying to get her Norwich terrier mix to attack Plaintiff.

3

themselves against what they viewed as Plaintiff's retaliatory campaign. The law firms did in fact correspond regarding the status of the restraining order petitions, share documents and information, and discuss investigative actions in furtherance of their clients' defense. Hayes Scott Letter at 7. Judge Freeman denied all three petitions, awarded each defendant attorneys' fees and costs, and also declared Plaintiff a vexatious litigant.[3]

In November 2010, during the course of litigation on the three petitions described above, Hayes Scott, Michael Allen, and Jim Hartnett met with officers of the RCPD "to sort out the various police and incident reports filed by [Plaintiff] which he utilized in his TRO petitions, as well as to gather information regarding [Plaintiff's] criminal history." Hayes Scott Letter at 7. In addition, Hayes Scott attorney Dara Tang had a phone call with Captain Mulholland of the RCPD in December 2010 regarding the vexatious litigant motion filed against Plaintiff by Claybaugh.

According to Hayes Scott, the joint defense agreement between Hayes Scott, Michael Allen, and HSP has continued. Hayes Scott notes that these counsel "discussed providing the RCPD and DA's office with the facts regarding [Plaintiff's] TRO Petitions against our respective clients and specifically to point out the various inconsistencies and false statements made therein." Hayes Scott Letter at 8.

**C. Subpoenas on Hayes Scott and HSP**

On November 6, 2013, Plaintiff served Hayes Scott with a subpoena seeking certain records and documents. On November 20, 2013, Hayes Scott objected to the subpoena in its entirety. On December 2, 2013, Plaintiff's counsel and counsel for Hayes Scott met and conferred, and Plaintiff agreed to limit the scope of two requests for production of documents that are not at issue in this letter. On December 10, 2013, Hayes Scott responded to the subpoena, produced some documents, and withheld others which it described on a privilege log. On December 13, 2013, Hayes Scott produced an amended privilege log.

---

[3] According to HSP, Plaintiff has been declared a vexatious litigant by Santa Clara County Superior Court and San Mateo County Superior Court, and is on the vexatious litigant list maintained by California's Administrative Office of the Courts. *See* http://www.courts.ca.gov/documents/vexlit.pdf (last accessed March 14, 2014).

1    On December 17, 2013, Plaintiff served HSP with a records subpoena. HSP timely
responded on January 10, 2014, and produced a privilege log with respect to certain withheld
documents.

At issue now are several documents that Hayes Scott and HSP have withheld on the basis of
the attorney work product privilege or the joint defense/common interest privilege. Each of these
will be discussed below.

## II.  LEGAL STANDARD

### A. Standards Governing Discovery

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding
any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).
"Relevant information need not be admissible at the trial if the discovery appears reasonably
calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "Relevancy,
for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary
boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006). "[T]he party
opposing discovery has the burden of showing that discovery should not be allowed, and also has the
burden of clarifying, explaining and supporting its objections with competent evidence." *La. Pac.
Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). Federal
Rule of Civil Procedure 26 also provides that a party withholding information under a claim that it is
privileged or subject to protection as trial preparation material must: (i) expressly make the claim;
and (ii) describe the nature of the documents, communications, or tangible things not produced or
disclosed in a manner that, without revealing information itself privileged or protected, will enable
the parties to assess the claim. Fed. R. Civ. Proc. 26(b)(5)(A). A privilege should be asserted within
thirty days of a request for production. *See* Fed. R. Civ. P. 34(b)(2)(A).

### B. Attorney-Client Privilege

The attorney-client privilege protects from discovery "confidential communications between
attorneys and clients, which are made for the purpose of giving legal advice." *United States v.
Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation omitted); *see Vasudevan Software, Inc. v. IBM
Corp.*, No. 09-5897-RS (PSG), 2011 WL 1599646, at * 1 (N.D. Cal. Apr. 27, 2011). The privilege

is "narrowly and strictly construed," and the party asserting it bears the burden of proving that it applies. *Vasudevan Software, Inc.*, 2011 WL 1599646, at *1 (quotation omitted); *accord United States v. Bergonzi*, 216 F.R.D. 487, 493 (N.D. Cal. 2003) (holding that party asserting privilege "must make a *prima facie* showing" that privilege applies). The privilege attaches when

> (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Richey*, 632 F.3d at 566 (quotation omitted). The privilege extends to electronic communications versions and preliminary drafts of communicated documents. *Laethem Equip. Co. v. Deere & Co.*, 261 F.R.D. 127, 139-40 (E.D. Mich. 2009) (citations omitted). However, if the advice sought from the professional legal advisor is not legal advice, the privilege does not apply. *Richey*, 632 F.3d at 566 (citation omitted). Attorney-client privilege belongs solely with the client, and only the client may waive it. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1372 (Fed. Cir. 2007) (citations omitted). Once a client waives the privilege, the waiver applies to "all other communications relating to the same subject matter." *Id.* (citation and quotation marks omitted); *accord Richey*, 632 F.3d at 566.

**C.  Joint Defense Privilege**

The joint defense privilege is an extension of the attorney client privilege that "has been long recognized by this circuit." *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583 (9th Cir. 1987) (citations omitted). The privilege "has its origins in situations where one attorney acts for two clients, [but] [i]t has been applied beyond the joint client context to the joint defense context—for instance, when the defendants are co-defendants in the same action or are defendants in separate actions sued by the same plaintiff." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (citing *B.E. Meyers & Co., Inc. v. United States,* 41 Fed. Cl. 729, 733 (1998)). Generally, under the joint defense privilege, "communications by a client to his own lawyer remain privileged when the lawyer subsequently shares them with co-defendants for purposes of a common defense." *Waller*, 828 F.2d at 583 (citation omitted).

In order for the joint defense theory to apply, there need not be actual litigation. *United States v. Gonzalez*, 669 F.3d 974, 980 (9th Cir. 2012) ("[A]s parties in separate actions might

nonetheless have reasons to work together toward a common objective, and there is no requirement that actual litigation even be in progress."). Moreover, the joint defense theory can extend to "interested third parties who have a community of interests with respect to the subject matter of the communications." *Nidec*, 249 F.R.D. at 579 (quoting Rice, Attorney-Client Privilege in the United States § 4:35, at 199-201); *see also In re Regents of the Univ. of California,* 101 F.3d 1386, 1390 (Fed. Cir. 1996) (noting that the common interest privilege may apply to a patent holder and its licensee). "No written agreement is required, and . . . a [joint defense agreement] may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who are or potentially may be codefendants or have common interests in litigation. *Gonzalez*, 669 F.3d at 979. "[H]owever, that legal assistance must pertain to the matter in which the parties have a joint legal interest, and the communication must be designed to further that specific legal interest." *Nidec*, 249 F.R.D. at 579. Thus a party claiming joint defense privilege bears the burden of showing "(1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Id.* at 578.

"[T]he case law is clear that one party to a [joint defense agreement] cannot unilaterally waive the privilege for other holders." *Gonzalez*, 669 F.3d at 982 (citing *United States v. BDO Seidman, LLP,* 492 F.3d 806, 817 (7th Cir. 2007) (The "privileged status of communications falling within the common interest doctrine cannot be waived without the consent of all of the parties.") and *John Morrell & Co. v. Local Union 304A,* 913 F.2d 544, 556 (8th Cir.1990) (joint defense privilege cannot be waived without the consent of all parties to the defense)).

**D. Work Product Doctrine**

The work product doctrine protects from discovery "materials prepared by an attorney in anticipation of litigation," be they "by or for the attorney." *Bergonzi*, 216 F.R.D. at 494 (citations omitted); *accord United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011). It aims to balance the "promotion of an attorney's preparation in representing a client" and "society's general interest in revealing all true and material facts to the resolution of a dispute." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1375 (Fed. Cir. 2007) (citation and quotation marks omitted). To qualify for work-

product protection, materials must "(1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative." *Richey*, 632 F.3d at 567 (citation and quotation marks omitted). When a document was not prepared exclusively for litigation, it will receive protection if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *Id.* at 568 (citation and quotation marks omitted). This analysis requires the court to examine the totality of the circumstances and determine whether the document was prepared in anticipation of litigation and "would not have been created in substantially similar form but for the prospect of litigation." *Id.* (citation and quotation marks omitted).

Unlike the attorney-client privilege, the work product doctrine may be overcome by a party's showing of "need and undue hardship." *In re Seagate Tech., LLC*, 497 F.3d at 1375 (citing Fed. R. Civ. P. 26(b)(3)). The degree of showing required, however, depends on whether the sought after material "is factual, or the result of mental processes such as plans, strategies, tactics, and impressions, whether memorialized in writing or not." *Id.* (citations omitted). Factual materials simply require a demonstration of "substantial need and undue hardship," while materials reflecting mental processes receive greater, "nearly absolute" protection. *Id.* (citations omitted).

A party waives work product protection "where disclosure of the otherwise privileged documents is made to a third party, and that disclosure enables an adversary to gain access to the information." *Bergonzi*, 216 F.R.D. at 497 (citation omitted). Just as with attorney-client privilege, however,

> [w]hen made in a federal proceeding . . . , [a] disclosure does not operate as a waiver . . . if (1) the disclosure is inadvertent; (2) the holder of the privilege . . . took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b). In addition, the joint defense privilege also operates as an exception to the rule on waiver where work product is disclosed to third parties. *Bergonzi*, 216 F.R.D. at 495-96 (common interest is an exception to waiver for both attorney-client and work product privileges).

### III. DISCOVERY DISPUTES

**A. NAROG 35-40, NAROG 44-52**

1  These documents are emails between attorneys from Hayes Scott, HSP, and Michael Allen
2 regarding scheduling the meetings with the police in November 2010.  Plaintiff argues that the
3 documents are "relevant to determine whether these attorneys acted in concert with the RCPD to
4 procure Plaintiff's criminal prosecution," and that the joint defense privilege does not protect these
5 documents because they are not communications made in furtherance of a common defense or
6 prosecution but instead mark "the beginning of a coordinated and concerted effort by this group of
7 attorneys to influence the RCPD to initiate a criminal prosecution against Plaintiff."  Hayes Scott
8 Letter at 4.

9  The court has reviewed these emails in camera and determined that they are protected by the
10 joint defense privilege.  At time the emails were sent, Hayes Scott was representing two neighbors
11 against whom Plaintiff had filed petitions for restraining orders and Michael Allen was representing
12 a third.  While Plaintiff had not filed a petition against Scott Armstrong, (HSP's client and another
13 of Plaintiff's neighbors), Hayes Scott avers that Plaintiff had made allegations against Armstrong,
14 and Armstrong believed he would soon be targeted by Plaintiff.  Thus the neighbors' attorneys had
15 reasons to work together toward a common objective, i.e. defending against a legal campaign that
16 Plaintiff had aimed at neighbors who testified against him in his criminal trial, or were otherwise
17 supportive of the criminal prosecution.  That there is no written agreement memorializing a joint
18 defense agreement is of no moment, as a joint defense may be implied from the situation and the
19 context of the emails.  The emails pertain to the matter in which the parties have a joint legal
20 interest, and the communication is designed to further that specific legal interest.

21  Plaintiff contends that Hayes Scott waived the joint defense privilege by failing to assert it in
22 a timely matter because it did not claim the privilege as grounds for withholding documents when it
23 objected to Plaintiff's subpoena on November 20, 2013.  *See* Fed. R. Civ. P. 45(d)(2)(B) (objections
24 "must be served before the earlier of the time specified for compliance or 14 days after the subpoena
25 is served").  However, Hayes Scott did object on the basis of attorney-client privilege, of which joint
26 defense privilege is a variant.  Furthermore, the requests for documents in Plaintiff's subpoena were
27 broad, such that it might not have been immediately clear to Hayes Scott that Plaintiff requested
28 documents that implicate the joint defense privilege.  Under these circumstances, Hayes Scott's

assertion of the joint defense privilege after Plaintiff clarified the scope of the discovery request is timely. Plaintiff's motion to compel production of these documents is therefore denied.

**B. NAROG 53-78**

This document is an email thread from June 2011 regarding the drafting of a memorandum for the RCPD about Plaintiff; the thread includes a draft of the memorandum.[4] The email recipients are Hayes Scott attorneys, as well as Michael Allen and Jim Hartnett. According to Plaintiff, after this memorandum was delivered to the RCPD, an officer of the RCPD approached an attorney in the district attorney's office on July 21, 2011, provided a copy of the memorandum, and asked, "What type of evidence would be needed on a perjury charge?" Hayes Scott Letter at 3; HSP Letter at 3. Plaintiff thus asserts that the emails and draft of the memorandum are relevant to "ascertain if this group of attorneys acted in concert with the RCPD to procure Plaintiff's criminal prosecution," to determine whether the officer's July 21, 2011 memorandum relied on defense counsel's June 2011 memorandum, and to reveal the involvement of other RCPD employees in Plaintiff's criminal prosecution. In response, Hayes Scott asserts the joint defense privilege and work product doctrine over these documents.

Having reviewed the document in camera, the court determines that it pertains to the matter in which the parties have a joint legal interest, that it is designed to further that specific legal interest, and that the privilege has not been waived. As noted above, Plaintiff and his neighbors have been involved in an ongoing dispute beginning in 2004, which culminated in a TRO against Plaintiff, the violation of which resulted in a criminal conviction and sentence against Plaintiff. In 2009, after Plaintiff's return to the community, he apparently began to target neighbors, including those who had testified against him in his criminal trial, by filing police reports and TROs against them. In 2011, attorneys for these neighbors compiled evidence that Plaintiff's police reports were false and brought it to the RCPD, which eventually resulted in Redwood City's prosecution against Plaintiff for filing false police reports, which in turn led to Plaintiff's instant lawsuit against Redwood City and RCPD officers for malicious prosecution. As discussed above, the clients of

---

[4] At the hearing, Plaintiff confirmed that HSP produced the final version of the June 2011 memorandum, which was provided to the RCPD.

Hayes Scott, HSP, and Michael Allen have a joint interest in defending themselves against Plaintiff's various actions. This joint defense effort also includes those attorneys' decision to reveal Plaintiff's alleged misbehavior to the RCPD, which is premised on supposedly false police reports about the same underlying events that form the basis of Plaintiff's petitions for restraining orders. This is ample basis for implying a joint defense, even in the absence of a written joint defense agreement. Accordingly, Plaintiff's motion to compel the production of this document is denied.

## C. NAROG 42, 79-80

NAROG0042 is an email dated November 16, 2011 from Hartnett to Tang, Stephen Scott (an attorney with Hayes Scott), and Allen about Plaintiff's criminal prosecution. NAROG0079-80 consists of two redacted emails dated November 16, 2011, from Hartnett to Tang and Allen, regarding a no contact order.       The court has reviewed these documents in camera. For the same reasons as stated above in the court's discussion of NAROG0053-78, the joint defense privilege provides grounds for withholding these documents. Accordingly, Plaintiff's motion to compel these documents is denied.

## D. NAROG 93

NAROG0093 is one page of Tang's meeting notes from the November 22, 2010 meeting with the RCPD. Plaintiff argues that this court should order Hayes Scott to produce these notes despite its assertion that the attorney work product privilege protects these documents because Plaintiff has a substantial need for the documents and the inability without undue hardship to obtain the substantial equivalent of the privilege documents. Specifically, Plaintiff avers that Redwood City has stated in response to discovery requests that it does not have documents pertaining to this meeting, so these meeting notes would provide a "contemporaneous factual account of the November 22nd meeting." Hayes Scott Letter at 5.

The meeting notes appear to capture the mental impressions of an attorney in the course of defending her client against Plaintiff's lawsuit. Plaintiff has not demonstrated substantial need for the disclosure of documents plainly protected by the attorney work product privilege. The substantial need prong of the test for disclosure of work product examines whether the information is needed for the party to prepare its case and whether the party requesting discovery can obtain the

11

facts from an alternate source. Fed. R. Civ. P. 26(b)(3) (party may discover documents prepared in anticipation of litigation if it has "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."). Plaintiff admits that he "could arguably depose the RCPD officers on this topic," Hayes Scott Letter at 5, but expresses concern that such testimony would be inferior because the officers' recollection might be poor. This is an ordinary risk that attends many litigations, and does not provide good reason to disclose protected attorney work product reflecting an attorney's mental processes. Plaintiff's request for this document is denied.

### E. Hartnett 539-40, 541-61

Hartnett 539-40 is an email from Hartnett to Michael Allen and Stephen Scott dated June 10, 2011, transmitting a draft of the June 2011 memorandum. Hartnett 541-61 is a draft of the June 2011 memorandum. HSP withheld both of these documents on the basis of the joint defense privilege. For the same reasons as stated above with respect to the analogous Hayes Scott documents, these documents are protected by the joint defense privilege.

### F. Hartnett 573-74

Hartnett 573-74 is a December 18, 2013 email from counsel for Defendants, Joseph Howard of Howard Rome (the firm defending the instant case), regarding the privilege log submitted by Hayes Scott in response to Plaintiff's records subpoena in this case. HSP withholds this document on the basis of the joint defense privilege.

"[T]he existence of a [joint defense agreement] is not necessarily an all-or-nothing proposition." *Gonzalez*, 669 F.3d at 981. A joint defense agreement may be premised on a "mutual interest that is defined more narrowly," such that the parties may agree to a joint defense on one aspect of their cases but remain antagonistic on others. *Id.* (husband and wife prosecuted in two separate criminal trials about the same insurance fraud, where husband planned to blame wife for insurance scam, could still have formed a joint defense agreement on the narrow issue of one aspect of wife's defense). As described above, the facts in this case demonstrate continued antagonism between Plaintiff and his neighbors, Redwood City, and the RCPD which has resulted in numerous legal actions. While Defendants, Hayes Scott's clients, and HSP's client are not co-defendants in

this case, the court finds that in light of the above chain of events, they nonetheless have a community of interests with respect to the subject matter of the communications because Plaintiff's series of lawsuits against each of them stem from the same underlying and continuing events. The emails in Hartnett 573-74, which this court has reviewed in camera, are designed to further the joint defense effort. Plaintiff does not argue that the joint defense privilege has been waived in this case. Accordingly, Plaintiff's motion to compel the production of Hartnett 573-74 is denied.[5]

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motions to compel are **denied.**

IT IS SO ORDERED.

Dated: March 17, 2014



DONNA M. RYU
United States Magistrate Judge

---

[5] As stated at the hearing, certain portions of Hartnett 573-74 are not protected by the attorney-client privilege, i.e. the first email, which was sent by Hayes Scott to Plaintiff's and Defendants' attorneys. The protected portion of the document should be redacted and the remainder produced.