United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  CORY NAROG,                          No. C-13-03237 DMR

12           Plaintiff(s),              **ORDER GRANTING PLAINTIFF'S
                                        MOTION FOR LEAVE TO FILE
13       v.                             SECOND AMENDED COMPLAINT
                                        [DOCKET NO. 52]**
14  CITY OF REDWOOD CITY,

15           Defendant(s).
    _____/
16

17

18          Before the court is a motion by Plaintiff Cory Narog for leave to file a Second Amended

19  Complaint ("SAC").  [Docket No. 52.]  This matter is appropriate for resolution without oral

20  argument pursuant to Civil Local Rule 7-1(b).  For the reasons stated below, Plaintiff's motion is

21  **granted.**

22                          **I.  BACKGROUND**

23          This court has summarized the background of this case elsewhere, including the factual

24  contentions of Defendants and third parties that are not alleged in the operative complaint.  *See*

25  Docket Nos. 38, 56, 60.  For purposes of this motion,the court considers only Plaintiff's allegations,

26

27

28

**United States District Court**
For the Northern District of California

1  which must be taken as true.[1]

2  **A. Allegations in First Amended Complaint**

3      On August 23, 2013, Plaintiff filed this lawsuit against the City of Redwood City ("Redwood

4  City"), three of Redwood City's police officers (Officers Figueroa, Faljean, and Gary), and unnamed

5  Doe defendants. *See* First Am. Compl. ("FAC") [Docket No. 7].

6      Plaintiff alleges that he called the Redwood City Police Department ("RCPD") on September

7  5, 2010, to report an incident of suspected vandalism at his home in Redwood Shores, California.

8  Plaintiff had ongoing problems with his neighbors, and suspected that one of them may have

9  vandalized his property.  Officer Figueroa met with Plaintiff, visited Plaintiff's property, reviewed

10 his statement, and left.  FAC at ¶¶ 14-17.

11     Plaintiff alleges that on the next day, September 6, 2010, Officer Faljean attended a

12 neighborhood watch meeting at which Plaintiff was not present and advised the meeting attendees to

13 monitor and document Plaintiff's activities.  Plaintiff believes that Officer Faljean's conduct caused

14 Plaintiff's neighbors to conduct surveillance on Plaintiff's property and to harass and annoy Plaintiff.

15 *Id.* at  ¶¶ 18-19.

16     Between September 2010 and August 2011, Plaintiff's relations with his neighbors worsened

17 and resulted in litigation between Plaintiff and several of his neighbors, including Allen Claybaugh.

18 Plaintiff alleges that Claybaugh's attorney, Dara Tang of Hayes Scott, met several times with

19 officers of the RCPD to discuss future action to be taken against Plaintiff.  *Id.* at  ¶ 20.

20     On August 18, 2011, Officer Gary contacted Plaintiff to discuss Plaintiff's September 5,

21 2010 report of suspected vandalism.  On February 9, 2012, the San Mateo County District Attorney

22 filed a criminal complaint against Plaintiff alleging a misdemeanor violation of California Penal

23 Code § 148.5(a) for making false reports to police.  On May 8, 2012, Plaintiff went to the RCPD to

24

25  ─────────────

26     [1] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

27      Plaintiff objects to and moves to strike certain exhibits attached to the declaration of Melissa
   Holmes [Docket No. 58-1] as well as Defendants' Request for Judicial Notice [Docket No. 58-2].
28  Because the court does not rely on any of these documents in determining this motion, Plaintiff's
   objections and motion to strike are **denied as moot**.

United States District Court

For the Northern District of California

1  pick up police reports he had requested and was arrested by several police officers in connection

2  with the criminal complaint. *Id.* at ¶ 30. Plaintiff was held for two days and released on bail.

3       Plaintiff made six court appearances in connection with his criminal case from June 2012

4  until December 2012. *Id.* at ¶ 34. On December 17, 2012, the criminal complaint against Plaintiff

5  was dismissed. *Id.*

6       Plaintiff brings six causes of action against Defendants: (1) malicious prosecution in

7  violation of the Fourth Amendment and 42 U.S.C. § 1983; (2) retaliation in violation of the First

8  Amendment and Section 1983; (3) infringement on Plaintiff's due process rights in violation of the

9  Fourteenth Amendment and Section 1983; (4) violation of California Civil Code § 52.1; (5)

10 intentional infliction of emotional distress; and (6) abuse of process. *Id.* at ¶¶ 43-83.

11 **B. Proposed SAC**

12      The parties stipulated and the court ordered that the last day for Plaintiff to seek leave to

13 amend the pleadings to add parties would be April 18, 2014. *See* Docket No. 25 at 2. This motion

14 was timely filed.

15      The proposed SAC adds RCPD Sergeant Ashley Osborne as a defendant, includes him in

16 Plaintiff's first, second, and sixth causes of action (for malicious prosecution, retaliation, and abuse

17 of process), and adds a seventh cause of action against Sergeant Osborne only for supervisory

18 liability under 42 U.S.C. § 1983. *See* Proposed SAC [Docket No. 52-1, Ex. 1] ¶¶ 53-63, 83-99. The

19 SAC also dismisses the third, fifth, and sixth causes of action as against Officer Faljean, although

20 Faljean remains named in the first and second causes of action. *Id.* at ¶¶ 53-63.

21      In addition, the SAC contains new factual allegations concerning the events that transpired

22 between September 2010 and November 2011, including some regarding Sergeant Osborne's

23 involvement in the alleged violations of Plaintiff's civil rights.

24      Specifically, on November 22, 2010, attorneys from three law firms representing Plaintiff's

25 neighbors and his homeowners association met with Captain Dan Mulholland, Officer Faljean, and

26 other officers of the RCPD regarding future action to be taken against Plaintiff. *Id.* at ¶ 22. On July,

27 1, 2011, one of those attorneys met with high ranking officers of the RCPD and presented a 23-page

28 memorandum and other materials captioned, "Possible Criminal Liability of Cory Narog," and

United States District Court

For the Northern District of California

1  sought a criminal prosecution of Plaintiff. *Id.* at ¶ 23. Sergeant Osborne was assigned to coordinate

2  and supervise the investigation pertaining to the criminal prosecution of Plaintiff. *Id.* at ¶ 24.

3  Sergeant Osborne in turn directed Officer Gary to gather evidence for a potential criminal

4  prosecution against Plaintiff. *Id.* On July 21, 2011, Sergeant Osborne submitted a memorandum to

5  Jennifer Ow of the San Mateo County District Attorney's Office seeking Ow's "guidance" regarding

6  certain charges that could be brought against Plaintiff. *Id.* at ¶ 25. On July 29, 2011, Sergeant

7  Osborne met with Ow to discuss a criminal prosecution against Plaintiff. *Id.* at ¶ 26.

8  Plaintiff alleges on information and belief (1) that Sergeant Osborne and Officers Figueroa

9  and Gary, with assistance by Officer Faljean, conducted a biased and partisan investigation into the

10  reported vandalism at Plaintiff's home; (2) that the officers manufactured evidence to initiate a

11  criminal prosecution against Plaintiff and falsely alleged that Plaintiff had made material

12  misrepresentations about the suspected vandalism; (3) that the officers' fabricated and malicious

13  allegations regarding Plaintiff purported statements were motivated by an intention to have Plaintiff

14  criminally prosecuted in retaliation for his complaints to the RCPD about his neighbors; and (4) that

15  on August 26, 2011, and September 15, 2011, the RCPD forwarded their officers' reports containing

16  the malicious and fabricated information about Plaintiff to the San Mateo County District Attorney

17  and sought Plaintiff's criminal prosecution for allegedly making a false police report in connection

18  with the vandalism that was reported on September 5, 2010. *Id.* at ¶¶ 29-34.

19  **II.  LEGAL STANDARD**

20  Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter

21  of course, at least until the defendant files a responsive pleading. After that point, leave to amend

22  should be granted unless amendment would cause prejudice to the opposing party, is sought in bad

23  faith, is futile, or creates undue delay. Fed. R. Civ. P. 15(a). Rule 15(a) provides that the court

24  should "freely give leave when justice so requires." *Id.* "This policy is to be applied with extreme

25  liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation

26  omitted). In the absence of an "apparent reason," such as undue delay, bad faith, dilatory motive,

27  prejudice to defendants, futility of the amendments, or repeated failure to cure deficiencies in the

28  complaint by prior amendment, it is an abuse of discretion for a district court to refuse to grant leave

to amend a complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 986 (9th Cir.1999). These factors do not "merit equal weight," and "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital*, 316 F.3d at 1052. "Granting leave to amend does not necessarily mean that the underlying allegations ultimately have merit." *FlatWorld Interactives LLC v. Apple Inc.*, 12-CV-01956-WHO, 2013 WL 6406437 at *3 (N.D. Cal. Dec. 6, 2013). "Rather, '[a]bsent prejudice, or a strong showing of any of the remaining [ ] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend.'" *Id.* (quoting *Eminence Capital*, 316 F.3d at 1052).

### III. DISCUSSION

Defendants oppose Plaintiff's motion insofar as it seeks to amend the pleadings to add Sergeant Osborne as a defendant. Defendants make no argument regarding prejudice. Instead, Defendants' stated basis for their opposition is Plaintiff's purported bad faith. However, Defendants have put forward no evidence or argument of bad faith other than the conclusory statement that "there is no evidence or testimony to support the amendment to add [] Osborne." Opp. [Docket No. 58] at 4. Bad faith in the context of a motion to amend a complaint to add parties or claims typically involves the moving party's efforts to prolong the litigation or destroy diversity jurisdiction. *See, e.g.*, *Padilla v. Sears, Roebuck & Co.*, No. 5:12-CV-00653 EJD, 2012 WL 5505071 at *2 (N.D. Cal. Nov. 13, 2012) ("[T]here is no indication that Plaintiffs are attempting to add the additional parties in bad faith. They are not seeking to unreasonably prolong the litigation or to destroy diversity by adding new parties."); *Dauth v. Convenience Retailers, LLC*, No. C 13-047 MEJ, 2013 WL 4225587 at *2 (N.D. Cal. July 31, 2013) (bad faith may include adding a party to defeat diversity, repeated filing of insufficient allegations, amending the complaint after losing on a motion for summary judgment; to the extent that defendants alleged that the proposed claims "lacked evidentiary support," this was not considered under a bad faith analysis but a futility analysis). Defendants' argument regarding bad faith appears to be that Plaintiff knows that amendment would be futile yet seeks to amend his complaint anyway; this argument requires the court to consider whether amendment would actually be futile. *See FlatWorld Interactives LLC v. Apple Inc.*, No. 12-CV-01956-WHO, 2013 WL 6406437 (N.D. Cal. Dec. 6, 2013) (considering argument from party

United States District Court

For the Northern District of California

1    resisting motion to amend that evidence did not support amendment under futility analysis).

2         "Futility of amendment can, by itself, justify the denial of a motion for leave to amend."

3    Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995).  "[A] proposed amendment is futile only if no

4    set of facts can be proved under the amendment to the pleadings that would constitute a valid and

5    sufficient claim or defense."  The proper test for determining the legal sufficiency of a proposed

6    amendment is identical to the one used when considering the sufficiency of a pleading challenged

7    under Federal Rule of Civil Procedure 12(b)(6).  *Miller v. Rykoff–Sexton, Inc.,* 845 F.2d 209, 214

8    (9th Cir.1988) (citing 3 J. Moore, *Moore's Federal Practice* ¶ 15.08[4] (2d ed. 1974)).  *See also*

9    *FlatWorld Interactives LLC v. Apple Inc.*, 12-CV-01956-WHO, 2013 WL 6406437 at *3 (N.D. Cal.

10   Dec. 6, 2013) ("The standard to be applied is identical to that on a motion to dismiss for failure to

11   state a claim.") (citing *Miller*, 845 F.2d at 214).

12        A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in

13   the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  When

14   reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the

15   factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

16   curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal

17   theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to

18   relief."  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing

19   *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

20   2001)) (quotation marks omitted).  A claim has facial plausibility when a plaintiff "pleads factual

21   content that allows the court to draw the reasonable inference that the defendant is liable for the

22   misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged

23   must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a

24   cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan*

25   *v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001),

26   *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

27        Defendants argue that the evidence and allegations fail to support claims against Sergeant

28   Osborne for malicious prosecution, retaliation, abuse of process, and supervisory liability.  The court

1    addresses each cause of action below.

2    **A. Malicious Prosecution**

3         "In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show that the

4    defendants prosecuted [him] with malice and without probable cause, and that they did so for the

5    purpose of denying [him] equal protection or another specific constitutional right." *Awabdy v. City*

6    *of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (quotation omitted).

7         Plaintiff alleges that Osborne coordinated and supervised the investigation leading to the

8    criminal prosecution of Plaintiff.  Osborne's involvement in the matter included submitting a

9    memorandum to the San Mateo County District Attorney's Office, and communicating with Ow to

10   seek her "guidance" regarding certain charges that could be brought against Plaintiff.  Plaintiff also

11   alleges, on information and belief,[2] that Osborne and others were biased against Plaintiff,

12   manufactured evidence and allegations against Plaintiff in order to retaliate against him for

13   complaining to the RCPD about his neighbors, and used these false allegations to persuade the San

14   Mateo County District Attorney to prosecute Plaintiff.  These allegations meet the required elements

15   for a malicious prosecution claim.  *See Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126-27

16   (9th Cir. 2002) (rejecting heightened pleading standard for constitutional tort claims in which

17   improper motive is an element, and finding that allegations that coroner falsified autopsy report that

18   played material role in the false arrest and murder prosecution of plaintiff can support a malicious

19   prosecution claim under Section 1983).

20        Defendants offer two arguments for why Plaintiff cannot demonstrate that Defendants

21   prosecuted him with malice and without probable cause.  First, they contend that there was probable

---

22        [2] To the extent that these allegations are made on information and belief, they are sufficiently
23   supported by other allegations to create a plausible narrative supporting a malicious prosecution claim.
     *Compare Medeiros v. Clark*, 713 F. Supp. 2d 1043, 1046 (E.D. Cal. 2010) (denying motion to dismiss
24   Section 1983 malicious prosecution claim on the basis of qualified immunity where the plaintiff alleged
     on information and belief that defendant law enforcement officers fabricated evidence in order to arrest
25   the plaintiff for burglary) *with Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care*
     *Servs.*, 727 F.3d 917 (9th Cir. 2013) (upholding district court's dismissal of state law supervisory
26   liability claim against Hill, against whom allegations were made solely on information and belief that
     Hill directed the other defendants to take the actions that form the basis of the complaint, but complaint
27   did not contain any specific factual allegations regarding Hill's involvement in the actions giving rise
     to this lawsuit, and it was implausible that medical system's highest ranking officer would be involved
28   in personnel action against plaintiff).

**United States District Court**
For the Northern District of California

1  cause on the face of Officer Figueroa's misdemeanor report for Officer Gary to conclude that

2  Plaintiff had made false statements to the police.  Second, Defendants argue that no evidence to date

3  shows that Osborne was aware that the report contained false information or that any Defendant had

4  malice toward Plaintiff.  These arguments essentially dispute whether Plaintiff has enough evidence

5  to prove his claims, a question the court must decline to consider at this point.  *See Vietnam*

6  *Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 219 (N.D. Cal. 2012) (granting in part motion to amend

7  complaint because amendment would not be futile; "[t]o the extent that [the defendants'] . . .

8  contend that [the plaintiff] will not ultimately be able to prove these claims, . . . evidence-based

9  arguments are more properly asserted in a motion for summary judgment."); *Medeiros*, *supra* n. 2,

10  713 F.Supp.2d at 1046 (denying motion to dismiss Section 1983 malicious prosecution claim where

11  the plaintiff alleged that defendant law enforcement officers fabricated evidence and manufactured

12  probable cause to arrest the plaintiff for burglary).

13  Defendants also argue that "the testimony and documents produced confirm that there was

14  no pressure by Sgt. Osborne, or anyone at the Redwood City Police Department, for the District

15  Attorney to file the misdemeanor criminal action."  Opp. at 5.  It is true that "[a] prosecutor's

16  independent judgment may break the chain of causation between the unconstitutional actions of

17  other officials and the harm suffered by a constitutional tort plaintiff."  *Beck v. City of Upland*, 527

18  F.3d 853, 862 (9th Cir. 2008).  However, again, resolution of this matter is inappropriate at this

19  stage.  *See Galbraith*, 307 F.3d at 1126 ("[T]he presumption of independent prosecutorial judgment

20  in the charging decision is an evidentiary presumption applicable at the summary judgment stage to

21  direct the order of proof; it is not a pleading requirement to be applied to a motion to dismiss, before

22  discovery has taken place.") (citation omitted).

23  Accordingly, Plaintiff may amend the complaint to allege a malicious prosecution claim

24  against Osborne.

25  **B. Retaliation**

26  To prevail on a First Amendment retaliation claim, a plaintiff must prove that: (1) the

27  Defendants' actions "would chill or silence a person of ordinary firmness from future First

28  Amendment activities"; and (2) that the Defendants' "desire to cause the chilling effect was a but-for

1   cause of the [their] action[s]." *Skoog v. County of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006).

2        Defendants' sole argument against permitting Plaintiff to amend his complaint to add this

3   cause of action against Sergeant Osborne is that "[t]here has been no testimony or documentary

4   evidence produced through discovery to establish causation for retaliation claim as to Sgt. Osborne."

5   Opp. at 6.  As discussed above, evidentiary arguments such as these are not appropriate under the

6   futility standard for a motion for leave to amend.  Plaintiff has adequately alleged all of the required

7   elements of a retaliation claim by alleging that Osborne and others initiated a criminal prosecution

8   against Plaintiff in retaliation for Plaintiff calling the police to report the suspected vandalism.

9   Accordingly, Plaintiff may amend the complaint to allege a retaliation claim against Osborne.

10  **C.  Abuse of Process**

11       To prevail on an abuse of process claim a plaintiff must show that the defendant "(1)

12  entertained an ulterior motive in using the process and (2) committed a wilful act in a wrongful

13  manner." *Coleman v. Gulf Ins. Group*, 41 Cal. 3d 782, 792 (1986).  Plaintiff's abuse of process

14  claim is that Defendants knew that they did not have sufficient evidence to show that Plaintiff had

15  made a false police report, and knew that the one year statute of limitations for a prosecution for

16  filing a false police report had already expired, but nonetheless referred Plaintiff to the District

17  Attorney for prosecution.  Proposed SAC at ¶¶ 85-90 (noting that Defendants' referral was

18  "completed" after the expiry of the statute of limitations).  Plaintiff alleges that Defendants

19  improperly used the legal process to take punitive measures against Plaintiff, including securing his

20  criminal prosecution and arrest.  *Id.* at ¶ 91.  These allegations plead the required elements for the

21  abuse of process claim.

22       Defendants argue that the decision to charge Plaintiff after the expiration of the statute of

23  limitations was the independent decision of the District Attorney.  Again, as noted above, the

24  "presumption of independent prosecutorial judgment in the charging decision is an evidentiary

25  presumption applicable at the summary judgment stage to direct the order of proof; it is not a

26  pleading requirement to be applied to a motion to dismiss, before discovery has taken place."

27  *Galbraith*, 307 F.3d at 1126 (reversing district court's order dismissing complaint for failing to

28  plead specific facts to overcome presumption of prosecutorial independence); *see also Williams v.*

United States District Court
For the Northern District of California

1  *Cnty. of Alameda*, No. C 12-02511 SBA, _ F.Supp.2d _, 2014 WL 556008 at *10 (N.D. Cal. Feb. 10,

2  2014) (quoting the above language from *Galbraith*); *Gressett v. Contra Costa Cnty.*, No. C-12-3798

3  EMC, 2013 WL 6671795 at *4 (N.D. Cal. Dec. 18, 2013) (same, and denying motion to dismiss

4  malicious prosecution claims).  Evidence "that the district attorney was subjected to unreasonable

5  pressure by the police officers, or that the officers knowingly withheld relevant information with the

6  intent to harm [the plaintiff], or that the officers knowingly supplied false information" could rebut

7  the presumption.  *Smiddy v. Varney*, 803 F.2d 1469, 1471 (9th Cir. 1986).  Thus Defendants'

8  arguments turn on the evidence, which is inappropriate in the context of a motion for leave to amend

9  the complaint.  Accordingly, Plaintiff may amend the complaint to allege an abuse of process claim

10  against Osborne.

11  **D.  Supervisory Liability**

12       Finally, Defendants also resist Plaintiff's motion to amend the complaint to add a cause of

13  action against Osborne for supervisory liability under Section 1983.  "A defendant may be held

14  liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the

15  constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful

16  conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)

17  (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).  Plaintiff alleges that Osborne was

18  personally involved in the investigation leading up to Plaintiff's criminal prosecution, and alleges

19  upon information and belief that Osborne was biased against Plaintiff and was one of the individuals

20  who manufactured evidence and allegations against Plaintiff.  These allegations are sufficient to

21  plead the elements of a supervisory liability claim.

22       Once again, Defendants argue the evidence.  *See* Opp. at 7 ("There's been no evidence or

23  testimony that would indicate that Sgt. Osborne was personally involved in any act that deprived

24  Narog of his constitutional rights or that Sgt. Osborne caused Narog's constitutional rights [to] be

25  violated through his supervisory acts.").  For the same reasons stated above, such arguments are

26  inappropriate at this stage in the litigation.

27  //

28  //

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IV.   CONCLUSION**

For the reasons stated above, Plaintiff's motion is **granted.**


IT IS SO ORDERED.

Dated:  July 14, 2014

_____
DONNA M. RYU
United States Magistrate Judge